# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00427-CR

**Daniel O'Dell, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
NO. 636993, HONORABLE J. F. CLAWSON, JR., JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Daniel O'Dell guilty of harassment.  *See* Tex. Pen. Code Ann. § 42.07 (West 2003).  The trial court assessed punishment at 180 days' incarceration and a $2000 fine, suspended imposition of sentence, and placed appellant on community supervision.  Appellant brings forward seven points of error:  (1) section 42.07 is facially unconstitutional; (2) he was denied due process during pretrial proceedings; (3) he was denied his right to call witnesses; (4) he was denied the right to present evidence in his defense; (5) his motion to recuse was erroneously denied, and he was unlawfully held in contempt; (6) "relative standards" were not followed during trial; and (7) the punishment phase of trial was unlawfully conducted.  We overrule these points of error and affirm the conviction.[1]

---

[1]  Appellant represented himself at trial with the assistance of standby counsel and continues to represent himself on appeal.  Appellant's brief does not comply with the appellate rules in numerous

## Background

Appellant suffered workplace injuries in 1997. Subsequently, appellant engaged in a running battle with his employer's insurer, the Texas Worker's Compensation Commission, and the Texas Rehabilitation Commission (TRC).[2] On May 15, 2003, a hearing officer appointed to resolve certain disputes between appellant and the TRC issued an order denying most of appellant's demands. That same day, appellant made a series of telephone calls to the TRC that constitute the primary basis of this prosecution.

The information alleged that appellant:

> with the intent to harass, annoy, alarm, abuse, torment, and embarrass another, to wit: the Texas Rehabilitation Commission ("TRC"), a government agency, made repeated telephone communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend another, to wit:
>
> • on May 15, 2003, the defendant called the TRC and spoke with employee Laura York and called her a "lying piece of filth,"
>
> • on May 15, 2003, the defendant called the TRC and spoke with employee Sarah Flores and yelled at her and referred to another employee as a "piece of shit,"
>
> • on May 15, 2003, the defendant called the TRC and spoke with employee Yvonne Garcia-Fuentes and yelled profanity including the phrase "you sons of bitches,"

respects, including its length (183 pages) and its failure to contain clear and concise arguments, with appropriate citations to authorities and to the record. *See* Tex. R. App. P. 38.1(g), 38.4. Our consideration of this appeal has been facilitated by the comprehensive responsive brief filed by counsel for the State.

[2] We refer to these agencies by their names during most of the time in question.

- on May 15, 2003, the defendant called the TRC and spoke with employee Tony Lawrence and yelled profanity including the phrase "fuck your mother,"

- on May 15, 2003, the defendant called the TRC and spoke with employee Maria Rutledge and called her a "damn piece of filth,"

- on May 15, 2003, the defendant called the TRC and left a voice mail message for employee Barbara Bearden referred to other employees as a "lying piece of filth" and a "lying piece of filthy trash,"

- on May 23, 2003, the defendant called the TRC and spoke with employee Sylvia Hardeman and referred to her as "you piece of filth trash."

*See id*. § 42.07(a)(4). There is not a point of error challenging the sufficiency of the evidence to support the jury's finding of guilt.

### Constitutionality of Statute

In his first point of error, appellant contends that section 42.07(a)(4) is unconstitutionally vague. He cites *May v. State*, 765 S.W.2d 438 (Tex. Crim. App. 1989), and *Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996), in support of this contention. *May* held that an earlier version of the harassment statute was unconstitutionally vague. 765 S.W.2d at 440. In *Long*, the court of criminal appeals also upheld a vagueness challenge to the stalking provision found in a subsequent version of section 42.07. 931 S.W.2d at 297.[3] Neither *May* nor *Long* speaks to the constitutionality of section 42.07(a)(4) as it reads now and in 2003.

Two courts of appeals have rejected vagueness challenges to section 42.07(a)(4) as it now reads. *DeWillis v. State*, 951 S.W.2d 212, 217 (Tex. App.—Houston [14th Dist.] 1997, no

---

[3] Stalking is now the subject of a separate statute. *See* Tex. Pen. Code Ann. § 42.072 (West 2003).

pet.); *Bader v. State*, 773 S.W.2d 769, 770 (Tex. App.—Corpus Christi 1989, pet. ref'd). In *Bader*, the court held that the defects identified in *May* had been cured by subsequent amendments to the statute. 773 S.W.2d at 770. In *DeWillis*, the court reached the same conclusion after a thorough survey of the pertinent authorities. 951 S.W.2d at 217. We agree with the reasoning of these opinions. We hold that section 42.07(a)(4) is not unconstitutionally vague on its face and overrule point of error one.

### *Pretrial Due Process*

In point of error two, appellant asserts that he was "abused by [the] prosecution time and again" prior to trial. He lists five specific violations of his due process rights: (1) denial of a speedy trial; (2) inadequate notice of the allegations against him; (3) denial of confrontation; (4) denial of compulsory process; and (5) denial of counsel.

**Speedy trial.** We find no indication that appellant raised the speedy trial issue below. *See Dunn v. State*, 819 S.W.2d 510, 526 (Tex. Crim. App. 1991). Appellant's trial began one year after the original information was filed. During that year, appellant filed voluminous pretrial motions, including at least six motions for continuance, that were heard during seven pretrial hearings. Appellant last moved for a continuance on the day trial began. Appellant's claim that he was denied a speedy trial is without foundation in the record. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997).

**Notice.** Appellant filed a motion to quash the information that was heard by the trial court on June 7, 2004, two weeks before trial. Although the motion complained that the information did not allege the offense in "plain and intelligible words," the only argument made by appellant at

4

the hearing was his contention that section 42.07 is unconstitutional. We find no basis for concluding that appellant was denied adequate notice.

**Confrontation and compulsory process.** Appellant does not refer us to any pretrial proceeding in which he was denied the right to confront witnesses against him or denied compulsory process for the attendance of witnesses. The State calls our attention to appellant's pretrial "demand for ancillary proceedings" in which he asked to depose two persons said to have his medical records. When this motion was taken up at a pretrial hearing on May 5, 2004, appellant advised the court that it was moot. No violation of appellant's confrontation and compulsory process rights is shown to have occurred during pretrial proceedings.

**Denial of counsel.** The record reflects that appellant voluntarily elected to represent himself, although standby counsel was appointed to provide assistance upon request. We are not referred to any instance in which appellant was denied assistance by counsel.

Point of error two is overruled.

*Witnesses and Defensive Evidence*

In point of error three, appellant again urges that he was denied his Sixth Amendment right to call witnesses in his own behalf. In point four, he contends that he was denied the right to present evidence in his defense. Appellant's argument under these points is that he was denied adequate discovery.

On February 20, 2004, appellant requested that subpoenas and subpoenas duces tecum be issued for 119 persons, including the President of the United States, the Attorney General of the United States, the Attorney General of Texas, numerous federal and state judges, and other public

officials. Apparently, appellant believed that these persons had personal knowledge and access to documents proving that he had been wronged by the TRC. The State moved to quash the subpoenas and sought an order requiring appellant to obtain leave of court before requesting subpoenas. These motions were granted following a hearing on March 12. At a subsequent hearing on May 5, the court explained to appellant that he should separately apply for each subpoena he wished to have issued and describe the relevance of the testimony or document sought. Appellant indicated that he was satisfied with this arrangement.

Another pretrial hearing was conducted on June 7, 2004. At the hearing, appellant acknowledged receiving discovery material from the State, but he insisted that it was incomplete. Appellant asked the court to act on his further "request for production" and "request of evidence and witnesses." Included in these motions were the names of fifty-six persons appellant wished to subpoena for trial. All of these subpoena requests were either granted by the court or withdrawn by appellant during the hearing. The court also granted appellant's request that the State tender to him: the recording of the TRC appeal hearing that triggered appellant's telephone calls that were the basis of the prosecution; appellant's TRC appeal case file; all TRC case notes pertaining to appellant for March through August 2003; appellant's TRC "contract"; appellant's TRC "official action statement"; and any photographs in TRC's possession pertaining to the charged incident. The court also authorized appellant to photograph the TRC offices and to send written interrogatories to his subpoenaed witnesses.

On June 21, 2004, before jury selection began, the court considered a number of additional motions filed by appellant. Among them was a motion for continuance complaining that appellant had not received the discovery previously ordered. Counsel for the State responded by

6

saying that appellant had received everything requested that existed. The prosecutor explained that there were no case notes dated later than March 2003 because appellant's TRC file had been closed, that he had been informed that TRC had no photographs in its possession, and that there was no TRC "contract" or "official action statement." There was no evidence contradicting this explanation. The motion for continuance was denied.

Appellant makes no showing that any material evidence or witness was withheld from him. Points of error three and four are overruled.

### *Motion to Recuse*

Appellant's fifth point of error raises two issues, the first of which concerns the overruling of his motion to recuse Judge Clawson. The elected judge of the county court at law recused herself early in the proceedings after appellant accused her of criminal misconduct and corruption. Two other visiting judges presided over hearings before Judge Clawson was assigned to the case.

On May 14, 2004, appellant filed a motion to recuse Judge Clawson asserting that the judge had a personal bias and prejudice against him and had become part of a "conspiracy of abuse, fraud and bribery" designed to deny appellant his legal rights. The motion was not verified as required by rule. *See* Tex. R. Civ. P. 18a(a). Nevertheless, the motion was referred to the presiding administrative judge for a hearing, which was conducted on May 27. At this hearing, appellant testified that Judge Clawson had personal knowledge of fraudulent acts committed by the previous judge and had himself conspired with the prosecutor; complained that Judge Clawson had refused his request to subpoena the President of the United States; and asserted that Judge Clawson "cannot

hear this case and allow due process of law due to his bias and his conspiracy of corruption." The recusal motion was denied.

Appellant filed a second motion to recuse Judge Clawson on June 4, 2004, and a third on June 21, 2004. Both motions were filed less than ten days before the next scheduled hearing. *See id.* They contained allegations substantially identical to those made by appellant at the May 27 hearing. Both were overruled by the presiding administrative judge without a hearing.

Given the procedural defects in the recusal motions, no error is presented. *See Arnold v. State*, 853 S.W.2d 543, 544-45 (Tex. Crim. App. 1993). In any case, there is nothing in the record that would lead us to conclude that the administrative judge erred by overruling the motions.

### Criminal Contempt

The other contention made by appellant in his fifth point of error is that he was unlawfully held in contempt. At the conclusion of appellant's trial, the State asked the court to hold appellant in contempt for having made groundless and false statements in his motions to recuse. *See* Tex. Code Crim. Proc. Ann. art. 1.052(d) (West 2005). Following a brief hearing, the court adjudged appellant guilty of criminal contempt and sentenced him to thirty days' confinement, which he suspended. This decision is not appealable, even in conjunction with the appeal of appellant's conviction. The validity of a contempt order can be attacked only by a writ of *habeas corpus* or, in some instances, writ of *mandamus. Metzger v. Sebek*, 892 S.W.2d 20, 54-55 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see Kidd v. Lance*, 794 S.W.2d 586, 587 n.1 (Tex. App.—Austin 1990, orig. proceeding).

Point of error five is overruled.

8

## *"Relative Standards"*

Appellant's sixth point of error is that "relative standards" were not followed during his trial. Appellant's brief devotes seventy-three pages to this point. The State accurately describes appellant's argument as "veer[ing] from topic to topic without clearly identifying what legal points he wants this Court to consider." A substantial portion of the argument is devoted to appellant's complaints regarding the scope of pretrial discovery and the rulings on his motions to recuse, issues we have already addressed. Appellant's additional arguments do not lead us to alter our previous holdings.

One of the items produced for appellant before trial was the recording of his TRC appeal hearing. On the day trial was set to begin, appellant filed a motion to have this recording examined by an expert on the ground that it "may have been tampered with." The motion was untimely and did not state grounds to believe that the requested examination was necessary. No error in overruling the motion is shown. Appellant asserts that various other documents admitted in evidence were false or altered. There is no evidence of this.

Appellant complains that witnesses he wished to call did not appear for trial. There is no indication, however, that appellant subpoenaed these witnesses. In addition, on the second day of trial, appellant and the State reached an agreement by which appellant limited his subpoena list to two persons, both of whom appeared and testified.

Appellant complains that the State was permitted to read the information to the panelists during voir dire. He does not cite authority holding that this was error.

9

Appellant complains that he was not permitted to offer evidence regarding the long history of his dealings with the TRC, alleged misconduct by TRC employees, and alleged financial irregularities on the part of the agency. We share the trial court's opinion that this evidence was not relevant to any issue at appellant's trial.

Appellant urges that the court erred by excluding, for lack of relevance and a proper predicate, defense exhibits seven (apparently appellant's entire TRC case file), eight (apparently a copy of a federal regulation), and nineteen (the nature of which is unclear from the record). These exhibits were not made a part of the appellate record. Nothing is presented for review.

Point of error six is overruled.

### *Punishment and Sentencing*

In his last point of error, appellant asserts that the trial court "did not follow applicable rules of law" during the punishment and sentencing phases of trial. Appellant argues that the court "limited the scope of the argument," "aggravated the facts," and "misled the jury." He does not identify where or how these alleged errors occurred.

Appellant does identify a problem that arose regarding the punishment verdict. Appellant elected to go to the jury for punishment. The jury returned a verdict assessing 180 days in jail and a $2000 fine. Because of an error in the verdict form, the jury recommended that the fine, but not the term of incarceration, be probated. After a discussion, it was agreed by all parties that appellant would withdraw his request for jury sentencing and that the court would assess a punishment of 180 days' incarceration and a $2000 fine, fully probated. We agree with appellant that this was confusing, but no error or harm to him is shown. Point of error seven is overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   January 12, 2006

Do Not Publish

11