

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1123-19

### Ex parte CHARLES BARTON, Appellant

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**KELLER, P.J., filed a dissenting opinion in which KEEL, J., joined.**

Suppose a citizen, unhappy with an opinion from this Court, sent repeated emails to a group of like-minded citizens, saying "Texas is in trouble" and "This is arguably the most devastating ruling I have ever received from a court" and "It's time to get serious and get on the phone, write letters, etc to EVERYONE YOU KNOW to make them aware of what's happening. Name names on this court! If this stands we lose Texas. It's do or die this time." Has that citizen committed a crime? Under the Court's decision today, the answer is "Yes." At the risk of being prosecuted myself for violating § 42.07(a)(7) of the Texas Penal Code, let me say here that the people of Texas should be alarmed by this holding.

The Court holds today that the "electronic communications" subsection of the Texas

harassment statute "does not implicate the First Amendment's freedom of speech protections" because the conduct that it regulates is non-speech conduct. I cannot agree. The term "electronic communications" alone suggests that the regulated conduct is speech, but the statutory definition of the term makes it clear that the regulated conduct is indeed speech. The statute defines "electronic communications" broadly, and the mens rea of the statute includes intent to "annoy," "alarm," or "embarrass" another. The statute encompasses a vast amount of speech that is protected by the First Amendment. And although I have been critical of *Scott v. State*[1] in the past, the statute in this case is far broader than the telephone harassment statute, and we need not overrule *Scott* to find the statute here to be unconstitutional.

Section 42.07(a)(7) provides that a person commits an offense if:

> with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he. . . sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.[2]

"Electronic communication" is defined expansively to mean:

> a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system.[3]

"Electronic communication" includes "a communication initiated by electronic mail, instant message, network call, communication tool, or a facsimile machine"[4] and "a communication made to a pager."[5]

---

[1]  322 S.W.3d 662 (Tex. Crim. App. 2010).

[2]  TEX. PENAL CODE § 42.07(a)(7) (2011).

[3]  *Id.* § 42.07(b)(1).

[4]  *Id.* § 42.07(b)(1)(A).

[5]  *Id.* § 42.07(b)(2)(B).

A transfer of signals, writing, images, sounds, or data by an "electromagnetic system" necessarily includes use of the internet. While the telephone harassment statute was limited to communications over the telephone, the electronic-communications statute is much more expansive, encompassing anything that could be thought of as an electronic communication.

But the breadth of the electronic-communications statute does not derive solely from the variety of electronic devices that may deliver communications or the variety of formats in which communications may occur. It also derives from the scope of the intended audience. Telephone conversations are, at least most of the time, limited to one individual communicating with another. But the internet opens up very public avenues of communication. Message boards, blogs, and internet news articles can be seen by the entire world. Depending on the privacy settings, Facebook posts can be seen by a large assortment of people. Then there are Twitter, Instagram, Snapchat, Tik Tok, and many other social networking platforms.

Since most communications over the phone are one-on-one, they are in some sense private, and although there are ways to block at least some types of unwanted calls, in some sense a telephone user might be considered a "captive audience" for harassing telephone communications. Privacy and "captive audience" rationales might allow for greater leeway in regulating telephone communications.[6] But when those rationales are absent, we should be especially leery of punishing speech. As the Supreme Court explained in *Cohen v. California*: "The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is . . . dependent upon a showing that substantial privacy interests are being invaded in an essentially

---

[6] *See Cohen v. California*, 403 U.S. 15, 21-22 (1971) (referring to "substantial privacy interests . . . being invaded in an essentially intolerable manner" and "the special plight of the captive auditor").

intolerable manner. Any broader view of this authority would effectively empower a majority to silence dissidents simply as a matter of personal predilections."[7]

The Court suggests that we need not reach the issue of whether the statute can be upheld under the *Cohen* privacy rationale because the electronic-communications statute is not aimed at speech. I disagree. The Court begins with the fact that it is possible to find some kernel of expression in almost every activity a person undertakes. But the electronic-communications statute is not concerned with just any activity—it is concerned with *communications*. And the "electronic" methods of delivering communications—including the internet and social media platforms—are mediums for delivering speech. Given the inherently communicative aspect of electronic communications, at least as a general matter, the Court errs to engage in an analysis of whether otherwise non-speech conduct constitutes expression.[8] The "intent to convey a particularized message" test for determining whether conduct that is ordinarily non-speech is actually expressive has no application to something that is ordinarily speech or expression.[9]

The Court makes much of the fact that the electronic-communications statute encompasses the mere sending of data, and it concludes that the repeated sending of data could be meaningless to an individual. Someone could send emails to flood another person's inbox. The emails could contain meaningless gibberish. But it is not enough to say that it is possible to violate a statute by conduct

---

[7] *Id.* at 21.

[8] *See Ex parte Thompson*, 442 S.W.3d 325, 334-36 (Tex. Crim. App. 2014) (no intent to convey a particularized message required for inherently expressive conduct such as parades, paintings, and photographs) (discussing *Hurley v. Irish–American Gay, Lesbian and Bisexual Group*, 515 U.S. 557 (1995)).

[9] *Id.*

that does not implicate the First Amendment, if under an overbreadth analysis, the statute reaches a substantial amount of First Amendment conduct in relation to its legitimate sweep.[10]

In *Thornhill v. Alabama*, for example, an anti-loitering statute made it an offense to loiter around or picket a business with intent to influence or induce others not to patronize the business.[11] Under the language of the Alabama statute, it appears that a criminal violation could occur if a person physically blocked entry into a business. Physically blocking entry would not be speech protected under the First Amendment. But the Supreme Court nevertheless found the statute to be overbroad because its language "comprehend[ed] every practicable method whereby the facts of a labor dispute may be publicized in the vicinity of the place of business of an employer."[12]

And in *State v. Johnson*, we acknowledged that "intentionally or knowingly damaging a United States flag is not inherently expressive" and that "a statute that proscribes such conduct will

---

[10] *See See Thornhill v. Alabama*, 310 U.S. 88, 91, 99-100 (1940) (loitering/picketing at a business); *State v. Johnson*, 475 S.W.3d 860, 873 (Tex. Crim. App. 2015) (flag desecration).

[11] *Thornhill*, *supra* at 91. Specifically, the Alabama statute provided that it was an offense to:

> go near to or loiter about the premises or place of business of any other person, firm, corporation, or association of people, engaged in a lawful business, for the purpose, or with intent of influencing, or inducing other persons not to trade with, buy from, sell to, have business dealings with, or be employed by such persons, firm, corporation, or association, or . . . [to] picket the works or place of business of such other persons, firms, corporations, or associations of persons, for the purpose of hindering, delaying, or interfering with or injuring any lawful business or enterprise of another.

*Id.*

[12] *Id.* at 100.

at least theoretically apply to some circumstances that do not implicate the First Amendment."[13] But we pointed out that "[m]ost conduct that falls within the provisions of the statute and that would come to the attention of the authorities would constitute protected expression."[14] We concluded that the flag desecration statute was unconstitutionally overbroad because it, "by its text and in actual fact, prohibit[ed] a substantial amount of activity that is protected by the First Amendment, judged in relation to its legitimate sweep."[15]

If we look at the electronic-communications statute's actual sweep, we can see that its language encompasses a truly enormous amount of speech. This is so even accounting for the requisite intent to harass, annoy, alarm, abuse, torment, or embarrass. As the examples at the beginning of this opinion illustrate, alarming someone could be the point of the communication. And so could annoying and embarrassing. One can look as far back as the parable of the unjust judge in the Bible to see an example of a persistent woman who finally gets relief from an unjust judge so that she will stop bothering him.[16] As for intent to embarrass, one could look to Andrew Breitbart's disclosure of Anthony Weiner's indiscretions and Breitbart's subsequent follow-ups on that story.[17] Often, the intent specified in the statute will be a legitimate purpose of the communication. The First

---

[13] *Johnson*, 475 S.W.3d at 873.

[14] *Id.* at 876.

[15] *Id.* at 882.

[16] Luke 18:1-5.

[17] *See* https://www.npr.org/2011/06/07/137042268/looking-at-breitbarts-role-in-weiners-scandal.

Amendment protects a great deal of speech that is purposefully annoying, alarming, or embarrassing.[18]

What about the *Scott* case? First, *Scott* said that the harassing phone calls would be essentially noncommunicative "in the usual case."[19] *Scott* did not hold that the harassing conduct at issue was inherently nonspeech; it held that it was usually nonspeech.[20] But the "usual case" in *Scott* was based narrowly on the use of a telephone, which ordinarily involves a private one-on-one communication. The electronic-communications statute is much broader, involving not only myriad different methods of conveying electronic communications but also involving an expanded audience—in many cases including everyone who has access to the internet or to a particular social media app.

Moreover, the *Scott* opinion explicitly contemplated that the recipient of the call would be the

---

[18] *See Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971) ("The First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people. If this were not the rule, the right of the people to gather in public places for social or political purposes would be continually subject to summary suspension through the good-faith enforcement of a prohibition against annoying conduct."); *Long v. State*, 931 S.W.2d 285, 290 n.4 (Tex. Crim. App. 1996) ("The First Amendment does not permit the outlawing of conduct merely because the speaker intends to annoy the listener and a reasonable person would in fact be annoyed. Many legitimate political protests, for example, contain both of these elements.").

[19] 322 S.W.3d at 669-70 (saying it twice).

[20] Scott did not create an alternative holding when it held that harassing phone calls under the statute were not protected by the First Amendment because the conduct invaded privacy interests in an intolerable manner. Rather, it created a supplemental holding—that in the "not usual" case the conduct was still not protected by the First Amendment because the conduct was an intolerable intrusion on privacy. *See id.* at 670 ("To the extent that the statutory subsection is susceptible of application to communicative conduct, it is susceptible of such application only when that communicative conduct is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner.").

target of the actor's intent to harass, annoy, alarm, abuse, torment, or embarrass.[21] But with many forms of electronic communications—e.g. an internet news article, a blog post, a message board post, or a social media post—there will usually be a great number of recipients of the communication who are not targets of the actor's harassing intent. In fact, it would often be unnecessary for the target of the actor's intent to even receive or read the electronic communication. When information about the target is disclosed in such a public manner, and when that information is what causes the target to be embarrassed or annoyed or alarmed, that information is speech.

And our later opinion in *Wilson v. State*[22] retreated from *Scott* in two respects: (1) by rejecting the notion that the term "repeated" was limited to situations that could be termed a single criminal episode,[23] and (2) by rejecting the notion that a facially legitimate purpose for a call negated having the requisite intent to harass, annoy, alarm, abuse, torment, or embarrass.[24] Even if the *Wilson* opinion's retreat in these two respects did not ultimately invalidate the conclusion in *Scott*, that retreat undermines any extension of the reasoning in *Scott* to the broader electronic-communications statute.

I strongly disagree with the Court's conclusion that the electronic-communications statute does not implicate the First Amendment. It follows that I also disagree with the Court's conclusion that the rational basis test provides the appropriate framework for evaluating the constitutionality of the statute. I would conduct an overbreadth analysis under the First Amendment and resolve whether

---

[21] *Id.* at 669 ("First, the text requires that the actor have the specific intent to harass, annoy, alarm, abuse, torment, or embarrass the recipient of the telephone call.").

[22] 448 S.W.3d 418 (Tex. Crim. App. 2014).

[23] *Id.* at 422-24.

[24] *Id.* at 425-26.

the statute punishes a substantial amount of protected speech in relation to its legitimate sweep. Because the Court does not answer that question, I will say here only that the breadth of the statute convinces me that the answer is "yes."

I respectfully dissent.

Filed: April 6, 2022

Publish