RECEIVED IN
COURT OF CRIMINAL APPEALS

August 4, 2015

ABEL ACOSTA, CLERK

PD-1341-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/30/2015 10:46:42 AM
Accepted 8/3/2015 8:33:49 AM
ABEL ACOSTA
CLERK

**No. PD-1341-14**

# TO THE

## COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

| | | |
|---|---|---|
| **STACY STINE CARY** | § | **APPELLANT** |
| **v.** | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

On Appeal from the Court of Appeals
for the Fifth Judicial District of Texas at Dallas
Court of Appeals No. 05-12-01421-CR

## BRIEF OF THE PILLAR OF LAW INSTITUTE
## AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT

JAMES "TREY" TRAINOR III
State Bar No. 24042052
Beirne, Maynard & Parsons, L.L.P.
401 W 15th St
Ste. 845
Austin, TX 78701-1667
(512) 623-6700 (Tel.)
ttrainor@bmpllp.com

*COUNSEL OF RECORD*

STEPHEN R. KLEIN*
Pillar of Law Institute
455 Massachusetts Ave. NW
Ste. 359
Washington, DC 20001-2742
(202) 815-0855 (Tel.)
stephen.klein@pillaroflaw.org

*OF COUNSEL FOR* AMICUS

*\*Motion for* pro hac vice *admission pending*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT OF INTEREST OF *AMICUS CURIAE*...............................1

SUMMARY OF ARGUMENT .....................................................................1

ARGUMENT ...............................................................................................4

   I.  Introduction .......................................................................................4

   II.  This Court Should Consider the First Amendment Issues in this Case ...........7

     A. First Amendment Issues Were Asserted at Trial, and This Court Should Address Them, Remand the Case or Ask for Additional Briefing ...............7

     B. This Court Should Protect the First Amendment Thereby Notifying Lower Courts, the Texas Attorney General's Office, the Texas Public Integrity Unit, and the Texas Ethics Commission of Their Duty to Respect Free Speech Rights ...............10

   III. Texas's Anti-Corruption Laws Are Narrowly Tailored to Specific Conduct in Order to Protect Political Speech ...............16

     A. The Texas Election Code Governed Cary's Actions ...............17

     B. The State Misapplied the Bribery Statute ...............19

   IV. The State's Application of the Bribery, Money Laundering, and Organized Crime Statutes Are Unconstitutionally Vague and Overbroad ...............22

     A. The State's Theory Leaves No Line Between Campaign Contributions and Bribes ...............24

     B. If a Candidate Can Be "Bribed" to Run for Office, Every Action Is an Official Action ...............30

     C. A Candidate's Failure to Report or Misreporting Cannot Be Used Against a Contributor ...............31

     D. Cary's Campaign Contributions Were Not "Bribes" or Otherwise Proceeds of "Criminal Activity" and Thus Not Subject to the Money Laundering Statute ...............34

     E. Campaigning Is Not "Organized Crime" ...............35

   V.  Conclusion ...............38

PRAYER FOR RELIEF ...............39

# TABLE OF AUTHORITIES

**Cases**

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................................ 8, 12, 16, 17

*Cary v. State*, 460 S.W.3d 731 (Tex. App.–Dallas 2015) .............................. 6, 7, 11

*Cary v. State*, No. 05-12-01421-CR, 2014 WL 4261233 (Tex. App.–Dallas Aug. 28, 2014) ........................................................................................27

*Citizens United v. Fed. Elec. Comm'n*, 558 U.S. 310 (2010) ...............................37

*DeLay v. State*, 443 S.W.3d 909 (Tex. Crim. App. 2014) ......................... 11, 13, 38

*Ex Parte Ellis*, 309 S.W.3d 71, 88 (Tex. Crim. App. 2010) ...................................34

*Ex Parte Perry*, No. 03-15-00063-CR, 2015 WL 4514696 (Tex. App.–Austin Jul. 24, 2015) ........................................................................................13

*Ex parte Thompson*, 442 S.W. 325 (Tex. Crim. App. 2014) ...................................12

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ......................................... 23, 26

*Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009) ....................................9

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ..................................9

*Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) ........................................23

*Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) .........11

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ..............................................9

*McCutcheon v. Fed. Elec. Comm'n*, 134 S.Ct. 1434 (2014) ............................ 17, 24

*McIntyre v. Ohio Elec. Comm'n*, 514 U.S. 334 (1995) ..........................................17

*Osterberg v. Peca*, 12 S.W.3d 31 (Tex. 2000) ................................................ 8, 9, 17

*Two Unnamed Petitioners v. Peterson*, -- N.W.2d --, 2015 WL 4376442 (Wis. 2015) .................................................................................... 11, 20

*U.S. v. Blagojevich*, -- F.3d --, 2015 WL 4433687 (7th Cir. 2015) .................. 25, 30

*U.S. v. Stevens*, 559 U.S. 460 (2010) ..................................................................23

*Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) ...............................23

*West Orange-Cove Colso. I.S.D. v. Alanis*, 107 S.W.3d 558 (Tex. 2003) ...............9

**Statutes**

TEX. CONST. art. 16, § 1 ..................................................................16

TEX. ELEC. CODE § 1.001 ..................................................................17

TEX. ELEC. CODE § 1.002 ..................................................................17

TEX. ELEC. CODE § 251.001 ........................................ 18, 25, 26, 34

TEX. ELEC. CODE § 253.003 ........................................................ 18, 35

TEX. ELEC. CODE § 253.151 ..................................................................17

TEX. ELEC. CODE § 253.155 ................................................ 4, 18, 35

TEX. ELEC. CODE § 253.176 ..................................................................20

TEX. ELEC. CODE § 254.001 ........................................................ 32, 35

TEX. ELEC. CODE § 254.031 ..................................................................32

TEX. ELEC. CODE § 254.041 ........................................................ 32, 35

TEX. ELEC. CODE § 254.231 ..................................................................32

TEX. ELEC. CODE § 254.232 ..................................................................32

TEX. ELEC. CODE § 254.261 ..................................................................32

TEX. GOV'T CODE § 572.021 ..................................................................36

TEX. GOV'T CODE § 572.023 ..................................................................36

TEX. GOV'T CODE § 572.034 ..................................................................36

TEX. PENAL CODE § 34.01 ..................................................................35

TEX. PENAL CODE § 34.02 ........................................................ 22, 35

TEX. PENAL CODE § 36.02 ........................................................ passim

TEX. PENAL CODE § 36.08 ..................................................................21

TEX. PENAL CODE § 37.10 ..................................................................37

TEX. PENAL CODE § 71.02 ..................................................................37

U.S. CONST. amend. I ........................................................ passim

## Other Authorities

Appellant's Brief, May 17, 2013, 2013 WL 3971317, *Cary v. State*,
No. 05-12-01421-CR (Tex. App.–Dallas) ............................................................7

Appellant's Reply Brief, Aug. 15, 2013, *Cary v. State*, No. 05-12-01421-CR
(Tex. App.–Dallas)................................................................................13

Joe Nixon, Testimony before State Affairs Cmte. of the Texas Senate,
May 4, 2015 ......................................................................................15

Mark Z. Barabak, *Rick Perry, humble and under indictment, announces second
White House run*, L.A. TIMES, June 4, 2015........................................................28

Michael King, *Point Austin: A Hill of Beans*, AUSTIN CHRON., Nov. 10, 2010......12

Order List, United States Supreme Court (558 U.S.), June 29, 2009......................10

R.G. Ratcliffe, *Tom DeLay sentenced to 3 years in prison*, HOUSTON CHRON.,
Jan. 10, 2011 ....................................................................................16

State's Supplemental Letter Brief, *DeLay v. State*, No. PD-1465-13,
2014 WL 3534745 .......................................................................... 33, 34

Suzanne Wooten Judicial Candidate/Officeholder Campaign Finance Report,
Jan. 15, 2009 .....................................................................................5

Texans for Greg Abbott Specific-Purpose Cmte. Campaign Finance Report,
Jan. 15, 2015 .....................................................................................5

Tory A. Weigand, *Raise or Lose: Appellate Discretion and Principled Decision
Making*, 17 SUFFOLK J. TRIAL & APP. ADVOC. 179 (2012) ...................................10

Trial Record, *State v. Cary*, No. 366-81636-2011......................................14

## Rules

TEX. CODE JUD. CONDUCT..............................................................................21

TEX. R. APP. P. 33.1(a) ................................................................................8

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

The Pillar of Law Institute is a nonprofit, nonpartisan institution organized under § 501(c)(3) of the Internal Revenue Code and dedicated to defending political free speech and association. It is a program of the Wyoming Liberty Group. The Institute represents plaintiffs and defendants nationwide who are threatened by laws that abridge political First Amendment rights. This case is of concern to *amicus* because it addresses the further collapse of constitutional protections for political speech and freedom of association, which lie at the very heart of the First Amendment.

The Pillar of Law Institute will pay attorneys' fees incurred in the preparation of this *amicus* brief.

## SUMMARY OF ARGUMENT

This Court should address the First Amendment issues raised in this case. Stacy Cary brought free speech claims against her indictment both before and after her trial, preserving these issues for review. Alternatively, this Court should remand the case for consideration of First Amendment concerns—particularly vagueness and overbreadth—by the Fifth Court at Dallas or request additional briefing here by both parties. The First Amendment issues in this case are pressing, and represent but the latest effort by State prosecutorial agencies to circumvent free speech in order to secure criminal convictions.

1

The Texas Election Code and the Judicial Campaign Fairness Act within it are part of a carefully constructed system of laws to deal with political corruption while respecting free speech. Political contributions are broadly defined in the Election Code, and the Penal Code narrowly recognizes that a contribution may become a bribe only when the State can prove an express agreement between the contributor and a candidate to take or withhold a specific exercise of official discretion in exchange for the contribution. Furthermore, the State must prove that this exercise would not have been taken or withheld but for the contribution. This evidentiary burden is difficult but necessary in order to ensure that political engagement is properly protected. Even then, not having such evidence, the State was not without redress in this case, but simply limited to the penalties provided in the Election Code.

The State's application of the bribery statute in this case is not only contrary to law but unconstitutionally vague. A political contribution must be given with the intent that it be used to run for office, but the State alleges that money given to a candidate may be intended as a bribe to file to run for office or continue running for office. These intents are indistinguishable. Furthermore, the official acts of filing to run for office or to continue running for office cannot be reasonably understood as consideration or *quid pro quo* in a bribery arrangement. Although Stacy Cary's contributions could have constituted a bribe for Judge Suzanne

2

Wooten to rule favorably in Cary's husband's family law case, the jury did not have to make this determination, so each bribery conviction should be overturned. The bribery charges are also unconstitutionally overbroad, because if filing to run for office or continuing to run for office are official acts that a candidate or officeholder may be bribed to undertake, any action conditioned on a campaign contribution will subject candidates and contributors across Texas to bribery charges.

The State's prosecutorial theory transforms the bribery statute from a safe harbor into a mousetrap. At trial, the prosecution argued that the only way that Stacy Cary's money transfers to Stephen Spencer for Suzanne Wooten's campaign could have constituted indirect political contributions were if the contributions were reported by Wooten. Yet again, the State's interpretation of the law leaves it unconstitutionally vague and overbroad. Contributors cannot be subjected to bribery and other criminal charges over requirements that are found nowhere in the law and thus could not have been fulfilled since contributors are not subject to such reporting.

Since the bribery statute is unconstitutionally vague and overbroad as applied to Stacy Cary, the charges for money laundering and organized criminal activity fail as well. If Stacy Cary's conviction is upheld, the State will set a precedent that threatens all political candidates, contributors and campaigns across

Texas to prosecutorial inquiries, charges and convictions for organized criminal activity. The criminalization of Texas politics through such prosecutorial machinations by the State should end here.

## ARGUMENT

### I. INTRODUCTION

When Stacy Cary paid Steven Spencer a total of $150,000 in 2008 to finance Suzanne Wooten's campaign for district judge in Collin County, it is likely that Cary indirectly and illegally contributed to Wooten's campaign, exceeding the contribution limits by $147,500. *See* 6 Trial Record ("TR") 171; TEX. ELEC. CODE § 253.155(b)(2)(B). Although most of this money was equalized with legitimate contributions raised by Wooten or with Wooten's own funds paid to Spencer for his campaign management, Cary's actions still circumvented campaign finance limitations and could have been subjected to a nearly $450,000 civil penalty under the Judicial Campaign Fairness Act. *See* TEX. ELEC. CODE § 253.155(f).

Under the most suspicious view of these and other facts, Stacy Cary and her husband David may have worked with Stephen Spencer to use these illegal contributions to unduly influence Suzanne Wooten to rule favorably in David Cary's family law case after she was elected. *See, e.g.*, 7 TR 110–11; 8 TR 40–42 (detailing phone calls made by Spencer attempting to prevent Wooten's recusal in David Cary's case). On the other hand, giving Cary the benefit of the doubt, she

4

simply made some very big mistakes in an effort to unseat Judge Charles Sandoval. Even then, these mistakes may have merely reflected common practice in Texas elections. To be sure, Wooten's campaign finance disclosures (based on a turnkey arrangement with Stephen Spencer) were not without precedent, and even today political companies throughout Texas provide paid services to candidates that are often not particularly detailed on campaign finance reports. *Compare* Suzanne Wooten Judicial Candidate/Officeholder Campaign Finance Report at 7, Jan. 15, 2009, 11 TR 2,408, *available at* http://204.65.203.5/public/398090.pdf (disclosing $1,500.00 and $7,550.00 expenditures to Stephen Spencer's SpenOff Strategies for "Turnkey mgmt svcs fees and costs") *with* Texans for Greg Abbott Specific-Purpose Cmte. Campaign Finance Report at 494, Jan. 15, 2015, *available at* http://204.65.203.5/public/643383.pdf (disclosing a $57,955.00 "advertising expense" for "political advertising" from CrossRoads Media, LLC). Furthermore, the elaborate lengths to which Wooten would go to accomplish her end of this alleged bribe stretch credibility at best. *See, e.g.*, 11 TR 2,460–2,477 (transcript of recusal hearing in David Cary's family law case).

Whether Stacy Cary was part of a bribery conspiracy, merely contributed to Wooten's campaign incorrectly, or did something in between, is, ultimately, irrelevant. This is because the State formulated charges in such a way to ensure that Cary could be convicted under any circumstances. To accomplish this, the

5

State and courts below ignored important provisions in Texas law. Furthermore, chillingly, the State applied various laws—including the bribery and money laundering statutes—in such a way as to run afoul of the First Amendment. U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech . . . .") If upheld, the State's formulation threatens all candidates, contributors and campaigns in Texas elections.

This *amicus* brief takes no position on the actual guilt or innocence of Stacy Cary or any other party to Suzanne Wooten's campaign in 2008. However, it calls for reversal of the courts below and an entry of acquittal for Cary. This brief urges this Court to address the myriad First Amendment issues in this case. Not only must the legal theory used against Cary suffer the sternest constitutional rebuke: prosecutors across Texas must hear, unequivocally, that crimes arising from political campaign activities must be objectively defined and enforced to comply with the First Amendment. To do otherwise would be to subject ordinary Texans to criminal prosecution just for engaging the political process.[1]

---

[1] During the drafting of this brief, this Court granted a Petition for Discretionary Review in the case of Stacy Cary's husband, David Cary. *Cary v. State*, PD-0445-15. David Cary's appeal is distinct because First Amendment issues were preserved much more clearly in his first appeal. *See Cary v. State*, 460 S.W.3d 731, 733 (Tex. App.–Dallas 2015). However, given the otherwise substantial similarity of the legal charges and the facts of each case, *amicus* requests that this Court consider this brief in both cases, specifically the arguments presented in sections II

## II.   THIS COURT SHOULD CONSIDER THE FIRST AMENDMENT ISSUES IN THIS CASE

The court below did not consider the First Amendment implications of the case against Stacy Cary. This is understandable, as Cary's counsel did not argue these issues on appeal. *See generally* Appellant's Brief, May 17, 2013, 2013 WL 3971317, *Cary v. State*, No. 05-12-01421-CR (Tex. App.–Dallas). However, First Amendment concerns were raised at trial, and this Court may consider such issues pursuant to the Texas Rules of Appellate Procedure and relevant precedent. Alternatively, this Court should remand this case for consideration of First Amendment issues by the Fifth Court at Dallas or require briefing on these issues from both parties. Given the trial court's rejection of First Amendment considerations, the ongoing recalcitrance against free speech by State prosecutorial agencies, and the constitutional necessity to protect political engagement, this Court should address the First Amendment issues in this case, specifically the as-applied vagueness and overbreadth of the State's prosecutorial theory.

### A. First Amendment Issues Were Asserted at Trial, and This Court Should Address Them, Remand the Case or Ask for Additional Briefing

Stacy Cary asserted a First Amendment argument against the prosecution before her trial in a motion to quash the indictment against her. *See* Defendant's

---

and III. *See Cary*, 460 S.W.3d at 733 ("the parties agree that the records in both cases are nearly identical[.]")

Supplemental Motion to Quash, Motion to Dismiss Indictment and Memorandum in Support of Original Motion to Quash, No. 366-82212-10, May 20, 2011, 1 Clerk's Record ("CR") 217, 218–221, *citing Buckley v. Valeo*, 424 U.S. 1 (1976) ("The Supreme Court has also long held that the giving of campaign contributions to candidates in an election is protected by the First Amendment.") The trial court denied this motion. *See* 1 CR 275. Cary re-asserted the First Amendment after trial. *See* Defendant's Motion for a New Trial, 3 CR 1162 ("[T]he acts in question comprise constitutionally protected speech, pursuant to the First Amendment of the United States Constitution.") The trial court did not rule on this motion. Although Cary's arguments "were not paragons of specificity, they nevertheless identified for the trial court the issue to be ruled on and provided the trial court the opportunity to rule." *Osterberg v. Peca*, 12 S.W.3d 31, 40 (Tex. 2000). Cary's statements were enough for the trial court to quash the indictment upon which her prosecution was based or to retry the case and, by extension, to preserve First Amendment issues for consideration on appeal.

The Texas Rules of Appellate Procedure require raising arguments at trial, but do not require preservation throughout the entire appellate process. *See* TEX. R. APP. P. 33.1(a) ("the record must show that: (1) the complaint was made *to the trial court* by a timely request, objection, or motion . . ." (emphasis added)). This Court has considered numerous cases where issues were raised for the first time on

8

appeal, but there is little precedent discussing issue waiver or forfeiture during the appellate process. *See, e.g.*, *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) ("[A] defendant may not raise for *the first time on appeal* a facial challenge to the constitutionality of a statute." (emphasis added)). Other precedent supports recognizing the preservation of First Amendment issues raised at trial unless unequivocally waived. *See, e.g.*, *Osterberg*, 12 S.W.3d at 39–41. In *Lebron v. Nat'l R.R. Passenger Corp.*, the United States Supreme Court considered a First Amendment argument raised but then specifically disavowed by the plaintiff/appellant at the district court and again in the federal court of appeals. 513 U.S. 374, 378–383 (1995). Following the appellate rules and these precedents, this Court can and should address the First Amendment concerns in this case.

Although waiver is a fairly well-established doctrine, it has never barred courts from exercising their fidelity to the Constitution. "The final authority to determine adherence to the Constitution resides with the Judiciary." *West Orange-Cove Colso. I.S.D. v. Alanis*, 107 S.W.3d 558, 563 n.11 (Tex. 2003), *citing Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176–78 (1803). Indeed, the very concept of American judicial review was born of neither party in the case leading to one of Justice Marshall's most celebrated opinions. *See Marbury*, 5 U.S. (1 Cranch) at 173–180. Nevertheless, there are numerous justifications for recognizing waiver and carefully addressing issue preservation. *See* Tory A.

9

Weigand, *Raise or Lose: Appellate Discretion and Principled Decision Making*, 17 SUFFOLK J. TRIAL & APP. ADVOC. 179, 182–187 (2012). Although *amicus* believes that the First Amendment issues in this case are plain and should be considered based on the case as presented to this Court, in the alternative *amicus* urges this Court to instead remand this case for consideration of these issues by the Fifth Court at Dallas or require the parties to brief the First Amendment issues before this Court. *See, e.g.*, Order List, United States Supreme Court (558 U.S.), June 29, 2009, *available at* http://www.supremecourt.gov/orders/courtorders/062909zr.pdf (including order restoring argument in *Citizens United v. Federal Election Commission* and requiring parties to submit briefs addressing whether the Court should overturn prior rulings on First Amendment grounds). This Court should take one of these actions because this case is but the latest in a series of egregious political persecutions in Texas.

**B. This Court Should Protect the First Amendment Thereby Notifying Lower Courts, the Texas Attorney General's Office, the Texas Public Integrity Unit, and the Texas Ethics Commission of Their Duty to Respect Free Speech Rights**

By accepting Stacy Cary's arguments in her brief, this Court could remedy her wrongful conviction without broad constitutional impact. Thus, some may argue that there is no need to address First Amendment concerns. A narrow ruling would adhere with some well-established precedent. *See Lyng v. Northwest Indian*

10

*Cemetery Protective Ass'n*, 485 U.S. 439, 445–46 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.") Indeed, the lower court adhered to this principle in the case against Stacy Cary's husband and declined to address First Amendment arguments. *See Cary v. State*, 460 S.W.3d 731, 733 (Tex. App.–Dallas 2015) ("We only address appellant's first three issues because our resolution of those issues is dispositive of this appeal.") This Court also recently remedied a criminal case that related to the Texas Election Code without discussing free speech in detail. *See generally DeLay v. State*, 443 S.W.3d 909 (Tex. Crim. App. 2014). However, the lack of a reasoned ruling by the trial court, the particular formulation of this case by the Texas Attorney General's office, past and ongoing efforts by the Texas Public Integrity Unit, and ongoing efforts of the Texas Ethics Commission all indicate nothing less than a reckless disregard for the First Amendment by numerous agencies of the State, and this Court should provide notice that political speech is alive and well.[2]

Although many issues were raised before, during and after Stacy Cary's trial, this did not diminish the trial court's duty to give constitutional objections—

---

[2] It is no small comfort that ignorance of first principles is not limited to prosecutors in Texas. *See Two Unnamed Petitioners v. Peterson*, -- N.W.2d --, 2015 WL 4376442, ¶¶ 44–76 (Wis. 2015) ("[T]he special prosecutor's legal theory is unsupported in either reason or law.")

particularly the right to free speech—due attention. *See* 1 CR 218–21. Some constitutional rights are frequently implicated in criminal proceedings, such as the Fourth, Fifth, and Sixth Amendments, and although they are raised as a matter of routine they are seriously addressed. Free speech is seldom raised, and in criminal cases the First Amendment often relates to what most would concede is not core speech. *See, e.g.*, *Ex parte Thompson*, 442 S.W. 325 (Tex. Crim. App. 2014). Elections and campaign activity, however, are undeniably and inextricably tied to political speech, which is at the core of the First Amendment. *See Buckley*, 424 U.S. at 14–15; 1 CR 218–21. Nevertheless, the trial court rejected all of Cary's First Amendment arguments without any recorded discussion. *See* 1 CR 275. This is only the most recent time a trial court rejected a serious First Amendment issue. All the more concerning is that these issues are not only ignored, but sometimes lackadaisically brushed off, as occurred at trial in *DeLay v. State*. *See* Michael King, *Point Austin: A Hill of Beans*, Austin Chron., Nov. 10, 2010, *available at* http://www.austinchronicle.com/news/2010-11-19/point-austin-a-hill-of-beans/ (quoting Judge Pat Priest's rejection of the defense of campaign finance money swaps: "Money is absolutely fungible. It's like beans.") Given the power of the State to bring criminal cases relating to elections, trial judges should be aware of the dangers of prosecutorial overreach and curtail it when necessary. A First Amendment ruling by this Court would affirm this duty.

This Court's recent decision in *DeLay* also weighs in favor of discussing constitutional concerns. 443 S.W.3d 909. This Court upheld the acquittal of Tom DeLay by the Third Court at Austin and rejected the State's application of the money laundering statute via the Election Code.[3] However, the decision was narrow, construing a heightened intent requirement in the Election Code for criminal charges for illegal corporate contributions. *Id.* at 922–30. Although rightfully ending a baseless prosecution that lasted nearly a decade, this Court's opinion left open the possibility that the Public Integrity Unit or other state agencies could rightfully prosecute future Election Code violators for money laundering and conspiracy under certain circumstances. Less than one year after the final *DeLay* decision, this Court now confronts a case brought by the Attorney General's Office that, far from tempering the Public Integrity Unit's overzealous blending of the Penal Code and Election Code, adds bribery as a new ingredient.[4] For two prosecuting offices to treat campaign finance violations—even malfeasance—as organized crime begs First Amendment scrutiny, and another

---

[3] Notably, neither of the *DeLay* appellate decisions were made by the time Cary submitted her arguments to the court below. *See DeLay*, 410 S.W.3d 902 (opinion issued Sept. 19, 2013); Appellant's Reply Brief, Aug. 15, 2013, *Cary v. State*, No. 05-12-01421-CR (Tex. App.–Dallas).

[4] Furthermore, the Public Integrity Unit may present yet another wholly innovative case to this Court soon enough that is as plainly violative of the First Amendment as its prosecution in *DeLay*. *See Ex Parte Perry*, No. 03-15-00063-CR, 2015 WL 4514696 (Tex. App.–Austin Jul. 24, 2015).

13

narrow ruling by this Court would merely give prosecutors the opportunity to one day formulate what will be ominously summarized as "conspiracy to elect a candidate." The First Amendment should be the first reference for any criminal prosecution involving the Election Code; in order to accomplish that, in this case it must be the last.

Finally, the administrative agency that oversees compliance with the Texas Election Code, the Texas Ethics Commission, also displays a stunning disregard to free speech and understandable regulation. At Cary's trial, an attorney from the Ethics Commission could not provide meaningful testimony as to the filing requirements for Suzanne Wooten, a lynchpin in the State's prosecutorial theory. *See* 6 Trial Record ("TR") at 167–71; 180–82.[5] To hear the Ethics Commission tell it, sometimes candidates must file detailed expenditure reports for the work of campaign consultants like Stephen Spencer, and sometimes they do not. The inevitable arbitrary and discriminatory application of such an open-ended case-by-case approach was of no consequence. Recent rulemakings by the Ethics Commission led some legislators to propose reforming the agency's rulemaking power entirely, supported by disturbing testimony from an attorney who practices before the commission:

[5] In David Cary's trial, the attorney's testimony was even more inconclusive following cross-examination. Testimony of Ian Steusloff, 6 Trial Record 66–185, *State v. Cary*, No. 366-81636-2011 (Apr. 22, 2013).

14

> [T]he Ethics Commission in our experience has taken the position—and the words were actually used—"the Constitution does not apply; this is a state administrative agency." And so in the adoption of rules, and in the… application of the rules that they've adopted, they've actually taken the position that they do not need to consider case law, they do not need to consider the United States Constitution, [and] they do not need to consider the cases of the Texas courts[.]

Joe Nixon, Testimony before State Affairs Cmte. of the Texas Senate, May 4, 2015, *available at* http://tlcsenate.granicus.com/MediaPlayer.php?clip_id=10032 (Testimony at 01:11:30).[6] The Ethics Commission maintains a staff that is assigned to provide guidance to candidates and political speakers. *See* 6 TR 148–49. As illustrated by the legal theory in this case and the testimony at trial, even with this guidance too often candidates cannot really know whether or not they have complied with the law until they are charged with a crime, sued civilly, or the statute of limitations passes. The State—in this case, the Attorney General's Office—the Public Integrity Unit, and Ethics Commission must learn that their obligations to the Constitution are as strong as that of the judicial branch.

Although this Court cannot rule specifically against any government agency or official outside of an immediate case, an affirmation that First Amendment principles apply to the Texas Election Code and election-related activity would

---

[6] Joe Nixon is a partner at Beirne, Maynard and Parsons, LLP and works with Trey Trainor, counsel of record on this brief. Mr. Nixon did not participate in the preparation of this brief.

provide a much-needed signal to executive agencies across the state. *See* TEX. CONST. art. 16, § 1. Prosecutors often seek to "send a message." *See, e.g.*, R.G. Ratcliffe, *Tom DeLay sentenced to 3 years in prison*, HOUSTON CHRON., Jan. 10, 2011, *available at* http://www.chron.com/news/houston-texas/article/Tom-DeLay-sentenced-to-3-years-in-prison-1684713.php. Many prosecutors could benefit from receiving one, namely that the First Amendment exists, and it means what it says. A ruling that constitutionally rebukes legal amalgamations like the one in this case may prevent such cases from reaching this Court in the first place. By extension, citizens like Stacy Cary would not have to endure a trial, conviction and multiple appeals under a legal theory so laughable it includes what amounts to a "bribe to run for office." This call by *amicus* is not hyperbole; the as-applied First Amendment problems with the State's theory are far more dangerous than Stacy Cary's alleged wrongdoing.

III. **TEXAS'S ANTI-CORRUPTION LAWS ARE NARROWLY TAILORED TO SPECIFIC CONDUCT IN ORDER TO PROTECT POLITICAL SPEECH**

To guard against overzealous prosecutors and ideological opponents turning political engagement into legal offenses, the Supreme Court has routinely construed election laws narrowly. *See, e.g.*, *Buckley*, 424 U.S. at 44. Importantly, political contributions "embody a central feature of democracy—that constituents support candidates who share their beliefs and interests, and candidates who are

16

elected can be expected to be responsive to those concerns." *McCutcheon v. Fed. Elec. Comm'n*, 134 S.Ct. 1434, 1441 (2014). Contributions also act as a means of political association between a candidate and supporters. *Buckley*, 424 U.S. at 41, 49.

The law that governs the conduct at issue in this case is found in the Judicial Campaign Fairness Act ("Judicial Act") and other provisions of the Texas Election Code ("Election Code"). *See* TEX. ELEC. CODE § 253.151 *et seq.*; § 1.001 *et seq.* These campaign finance rules must be presumed to be the operative, narrow set of laws that strike the correct balance between preventing corruption and protecting First Amendment interests. Indeed, the Election Code itself confirms this. TEX. ELEC. CODE § 1.002 (noting that the Code is the main governor of "all general, special, and primary elections held in this state" and "supersedes a conflicting statute outside this code unless this code or the outside code expressly provides otherwise.")

## A. The Texas Election Code Governed Cary's Actions

The Judicial Act and the Election Code as a whole "lessen[] the risk that individuals will spend money to support a candidate as a *quid pro quo* for special treatment after the candidate is in office." *Osterberg*, 12 S.W.3d at 47 (quoting *McIntyre v. Ohio Elec. Comm'n*, 514 U.S. 334, 356 (1995)). Following the plain

17

language of the law here renders a simple result: in the case at hand, prosecutors were only entitled to apply the Election Code.

A campaign contribution is defined under Texas law as a contribution to a "candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office." TEX. ELEC. CODE § 251.001(3). Similarly, a contribution is a "direct or indirect transfer of money, goods, services, or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a transfer." TEX. ELEC. CODE § 251.001(2). There is but one narrow exception to these rules where a campaign contribution can be considered a bribe. Under the law, this exception requires evidence of an "express agreement to take or withhold a specific exercise of official discretion" and that this exercise "would not have been taken or withheld but for the benefit." TEX. PENAL CODE § 36.02(a)(4).[7] These provisions matter. The Texas Election Code deliberately seeks to protect political engagement by broadly defining what constitutes a contribution, and the Penal Code complements this by making a very narrow exception for when a contribution may be considered a bribe. Without these definitions, any fervent

---

[7] Where judicial elections are implicated under the Judicial Act, contribution violations are subject only to civil penalty. TEX. ELEC. CODE §§ 253.003(c), 253.155(f).

18

prosecutor could destroy the lives of politically active Texans. Furthermore, the Penal Code places the burden on the government, not the speaker, to produce material evidence that a quintessential act of free speech—a campaign contribution—is really a bribe.

The record below demonstrates that, while complicated, Stacy Cary's funding was used for the benefit of Suzanne Wooten's campaign. *See, e.g.*, 7 TR 29 ("Q. … [A]absent this $25,000 from Stacy Cary, would [Stephen Spencer] be able to pay for these radio ads [for Judge Wooten's campaign]? A. No.") Stacy Cary wanted to support Suzanne Wooten as a judicial candidate, and provided what appears to be a number of excessive campaign contributions indirectly via Stephen Spencer. Even the State's forensic expert explicitly testified that the money in question was "used by Stephen Spencer to benefit the campaign." 7 TR 224. The prosecutors did not introduce any evidence of an express agreement to bribe Suzanne Wooten to take an official act as a judge, leaving the actions in question solely under the purview of the Election Code.

## B. The State Misapplied the Bribery Statute

Rather than be confined to the boundaries of the Election Code, prosecutors simply supplanted Texas's bribery provisions. Political contributions may act as bribes only when the State meets a higher burden to show "an express agreement to take or withhold a specific exercise of official discretion" and that this exercise

19

"would not have been taken or withheld but for the benefit." TEX. PENAL CODE § 36.02(a)(4). Texas purposefully drafted the Election Code and Judicial Act with First Amendment concerns in mind, for the state is not free to empower political prosecutors to roam freely, investigating at whim, and otherwise interfering in the political lives of its citizens. *See Two Unnamed Petitioners v. Peterson*, -- N.W.2d --, 2015 WL 4376442 (Wis. 2015).

The Texas Election Code and Judicial Act strike the right balance between preventing corruption and allowing for ample political engagement. Where errors, violations, or other incidents occur, a wide host of administrative and civil remedies are available and provide the correct fit for the offenses in question. *See, e.g.*, TEX. ELEC. CODE § 253.176 (providing for formal hearings before the Texas Ethics Commission and for civil penalties up to three times of the improper contribution). These provisions are important because they allow for citizen engagement in the political process, a free exercise of First Amendment rights, and otherwise ensure that politically active, but unsophisticated, Texans will not fear imprisonment for mistakes and violations.

The Texas Bribery Statute recognizes that there are instances when campaign contributions act as bribes. TEX. PENAL CODE § 36.02(a)(4). But because it imposes criminal sanctions in an area that closely abuts protected First Amendment freedom, it requires evidence of an express agreement concerning any

20

such bribe. This imposition of an evidentiary burden on the government is the cause of prosecutorial scorn in this case—prosecutors would have to prove their case, rather than conjure it up. But it is this very lynchpin of the law that should prohibit political witch-hunts in Texas and otherwise protect ordinary political activity, like a Texan supporting a judicial candidate. Without evidence of an express agreement—and this is a simple requirement—prosecutors have no room to pursue bribery charges in this case. Prosecutorial dislike of evidentiary burdens is no reason to undo the careful constitutional balancing found in the Election Code.

Texas law does not lack a carefully developed system of anti-corruption laws to ensure the integrity of the political process. For serious violations of the law, Texas remedies real bribery in the Penal Code. *See* TEX. PENAL CODE § 36.02(a). Texas also has anti-gift laws to protect against buying the favor of officeholders. TEX. PENAL CODE § 36.08. Finally, tying to judicial elections, the Texas Code of Judicial Conduct secures the impartiality and integrity of the judiciary. TEX. CODE JUD. CONDUCT, Canons 3(B)(1), 4(D), 5. And for areas implicating ordinary political engagement that includes campaign contributions, expenditures, and political organizational requirements, the Election Code delicately balances First Amendment and anti-corruption concerns. In this case the

21

State flagrantly disregards these distinctions, criminalizing many forms of constructive political engagement.

Stacy Cary's case is not about bribery, money laundering, or organized crime. It is rather about a political amateur whose First Amendment rights were ignored by prosecutors when she incorrectly financed a judicial campaign. This Court must ensure that the careful application of the Judicial Act and the entire Election Code are honored and that the State's attempt at criminalization of political engagement is rebuffed.

## IV. THE STATE'S APPLICATION OF THE BRIBERY, MONEY LAUNDERING, AND ORGANIZED CRIME STATUTES ARE UNCONSTITUTIONALLY VAGUE AND OVERBROAD

The Texas bribery and money laundering statutes are not facially vague or overbroad. TEX. PENAL CODE §§ 34.02; 36.02. However, the State's application of these laws—and, by extension, the organized criminal activity statute—against Stacy Cary took liberties that not only surpassed the laws' plain meaning, but left any understanding of the laws unconstitutionally vague and overbroad. Vagueness is a due process concern that should be avoided in all statutes, and raises special concern when affecting free speech:

> [A]n enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited,

so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut(s) upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of (those) freedoms." Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked."

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (internal citations omitted). Thus, "[i]f . . . the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 499 (1982); *see also Long v. State*, 931 S.W.2d 285, 287–88 (Tex. Crim. App. 1996) ("When a statute is capable of reaching First Amendment freedoms, the doctrine of vagueness demands a greater degree of specificity than in other contexts.") Overbeadth, a related but distinct doctrine, calls for scrutinizing laws that prohibit constitutionally protected conduct along with legitimately restricted conduct. *See U.S. v. Stevens*, 559 U.S. 460, 473 (2010).

The State argues that Stacy Cary's money transfers to Stephen Spencer were not campaign contributions, but this case undeniably involves political activity, and this Court's ruling will affect the interplay between the Election Code and the

23

Penal Code. The First Amendment is plainly implicated in all of the activity in question. *See McCutcheon*, 134 S.Ct. at 1441 ("[Contributions] embody a central feature of democracy—that constituents support candidates who share their beliefs and interests, and candidates who are elected can be expected to be responsive to those concerns.") Thus, the more stringent tests of First Amendment vagueness and overbreadth apply to the application of the statutes in this case.

Whether a challenge is brought facially or as-applied, First Amendment rulings affect the parties in a particular case and beyond. As previously discussed, this case represents the most recent in a growing line of attempts by State prosecutorial agencies to unconstitutionally expand Texas election law. *See supra* part II(B). Addressing the constitutional concerns with the State's theory in this case may turn the tide of this chilling wave of political persecutions.

## A. The State's Theory Leaves No Line Between Campaign Contributions and Bribes

The bribery statute aims to punish payment for exercises of "official discretion" that will benefit the payer. TEX. PENAL CODE § 36.02(a). The statute covers public servants, party officials and voters, including judges who "exercise . . . official discretion in a judicial . . . proceeding." *Id.* As discussed in the previous section, the statute is carefully tailored to prevent most campaign contributions from being considered bribes. *See supra* part III. However, the State's theory not

24

only violates the bribery statute itself, but makes it unconstitutionally vague and overbroad with two of its applications to Stacy Cary. The State alleges that Cary's transactions to Stephen Spencer were bribes for Suzanne Wooten to "fil[e] paperwork to run for judge," to "proceed[] or continu[e] with a campaign to unseat the incumbent elected Judge of the 380th Judicial District Court," or to "issue favorable rulings in cases in which the Defendant or David Cary [were] parties" after Wooten took office. *See* 3 CR 1055. Only the last of these could be reasonably understood by a person of ordinary intelligence to be prohibited by the bribery statute. Since two of these three alternative theories are unconstitutionally vague, the bribery convictions cannot stand. *See U.S. v. Blagojevich*, -- F.3d --, 2015 WL 4433687 at *3 (7th Cir. 2015) (vacating convictions for extortion when one of three alternative theories presented to the jury was legally insufficient: "a proposal to trade one public act for another, a form of logrolling, is fundamentally unlike the swap of an official act for a private payment.")

The first reason the bribery statute is unconstitutionally vague as-applied stems from its exemption of a "political contribution" from most of its purview and the intent required to commit a bribe. TEX. PENAL CODE § 36.02(d). The Election Code states that a "political contribution" includes a "campaign contribution," which is "*offered or given with the intent that it be used in connection with a campaign for elective office* or on a measure." TEX. ELEC. CODE § 251.001(3), (5)

25

(emphasis added). This definition is further broadened by describing a "contribution" as a "*direct or indirect transfer* of money, goods, services, or any other thing of value[.]" TEX. ELEC. CODE § 251.001(2) (emphasis added). An experienced election lawyer, much less a person of ordinary intelligence, could not meaningfully distinguish between giving a contribution to a candidate—or, in this case, a candidate's campaign consultant—with the intent that it be used in a campaign for elective office (which is required by the Election Code) and giving a candidate money with the intent that he or she file paperwork to run for office or continue with a campaign (as alleged by the State's theory). The intent required by law to make a contribution is entirely indistinguishable from two of three of the State's bribery theories. Since there is no way under the law for a contributor to make these distinctions, *all* campaign contributions are subject to the bribery statute under the State's theory, leaving a jury to decide between a contribution and what amounts to a "bribe to run for office." *See also infra* part IV(C) (dispelling the State's "safe harbor" theory). This fails First Amendment vagueness, for if the law may be applied this way contributors will "steer far wider of" the bribery statute by foregoing political contributions, perhaps entirely. *See Grayned*, 408 U.S. at 108–09.

The second vagueness problem with the State's application of the bribery statute is that a person of ordinary intelligence would also distinguish a bribe from

26

a campaign contribution based on the statute's requirement of "consideration." TEX. PENAL CODE § 36.02(a)(1)–(3). Although this is a legal term of art, ordinary people understand that a bribe means getting a tangible benefit in return for a payment, or *quid pro quo*. As the dissent in the court below described:

> Encouraging a person to run for office, any office, in and of itself, is a lawful and acceptable civic act, as is becoming a candidate for public office. Encouraging a person to proceed and continue with a campaign to unseat an incumbent judge is likewise a lawful and acceptable civic act. It is common for citizens to engage in such acts on a regular basis, and both acts are considered public spirited. . . . If acts such as encouraging a person to file or encouraging a person to keep running for office can be construed as the consideration to establish bribery, the statute will condemn legitimate civil and political activity and it will be left only to the State's imagination what an indictment could allege in terms of similar acts . . . .

*Cary v. State*, No. 05-12-01421-CR, 2014 WL 4261233, at *43 (Tex. App.–Dallas Aug. 28, 2014). This portion of the dissent foregoes citing the First Amendment, but the amendment exists to protect from these exact dangers. Just as the State's theory leaves the intent required to make a political contribution indistinguishable from the intent to make a bribe, the theory also erases any meaningful determination of a benefit that results from an alleged bribe. A contribution's constitutionally-recognized purpose as an expression of support and association could not be distinguished from consideration. The problem is distinct, but the

27

result is the same: all political contributions under the Election Code become subject to the bribery statute in the Penal Code, threatening to criminalize political speech and association.

Parts of the trial record hint at the lengths to which the State's theory could go to criminalize political participation across Texas. For example, as one prosecutor stated at Cary's trial, "the other thing to remember about a bribe is that the bribe is complete when a person makes the offer, not when it's accepted." 9 TR 14. One does not need an active imagination to predict how politically opposed operatives could use the law against one another following the State's theory. A simple public utterance of support—"If you run for office, I will max out my contribution!"—will be subject to complaints with a District Attorney over bribery, and possibly indictment. Such charges may go nowhere, but they make for great press, with the added benefit that the legitimacy of a legal theory is seldom disclosed in a catchy headline. *See, e.g.*, Mark Z. Barabak, *Rick Perry, humble and under indictment, announces second White House run*, L.A. TIMES, June 4, 2015, *available at* [http://www.latimes.com/nation/politics/la-na-rick-perry-2016-20150604-story.html](http://www.latimes.com/nation/politics/la-na-rick-perry-2016-20150604-story.html). As this case and far too many other cases prove, laws meant to prevent and punish political corruption are often the dirtiest, most corrupt political tools. If such laws are to exist at all, they must satisfy First Amendment vagueness concerns.

The State's third option in each bribery charge—that Stacy Cary's contributions were intended for Wooten to alter the outcome of David Cary's family law case—is an unequivocal and understandable description of bribery. But the jury did not have to make this specific determination. Rather, as alternative theories the contributions could be bribes to file to run for office, continue running for office, *or* to rule in David Cary's favor:

> [W]e've alleged three different ways to commit the crime. Manner and means. The first is persuading Suzanne Wooten to run against Charles Sandoval. The second is persist [sic] in running. And the third one is ruling in her favor. You may believe that the $50,000 was for her to run. You may believe the $50,000 was for her to persist in running. And you may very well believe that the $50,000 was for her to rule. You can all get there. *You don't have to agree on that. You only have to agree that the money was intended to get an action from Suzanne Wooten, not necessarily exactly what that action was.*

9 TR 11 (emphasis added). The jury instructions repeatedly affirmed the validity of this theory to the jury. *See* 3 CR 1055–56, 1058–64. Because the first two applications of the statute were unconstitutionally vague, the jury's verdict cannot be salvaged.[8]

---

[8] Even under the State's sole legitimate conception of bribery, the State was required to prove that Cary's *political contributions* were bribes. *See* TEX. PENAL CODE § 36.02(a)(4). That is, the State would have had to produce "direct evidence" an express agreement by Judge Wooten "to take or without a specific exercise of official discretion" and that "such exercise of official discretion would not have

## B. If a Candidate Can Be "Bribed" to Run for Office, Every Action Is an Official Action

The State's bribery theory is vague because it is impossible to understand and would allow arbitrary and discriminatory enforcement of the statute. It is also overbroad, because not only would any political contributor become subject to a bribery charge, any action following a campaign contribution (or any gift of value) would also make contributors and candidates alike subject to bribery charges. If filing to run for office or continuing to run for office are exercises of "official discretion" that can be "consideration" for a payment of money and thus a bribe, then many other legitimate acts by a candidate would count as well. Many of these would have far more direct and material benefits to the payer, contributor, or "briber," but would nevertheless be normally understood as perfectly legitimate— even wholesome—acts in representative government. *See Blagojevich*, 2015 WL 4433687 at *3 (distinguishing quid pro quo corruption from political logrolling).

Consider, for example, a citizen who is a member of a local civic organization. This citizen meets a candidate at a function and offers to contribute to his campaign if he promises to speak at one of the organization's meetings. To be sure, this may not be particularly polite, but this does not bring it close to corrupt behavior. Nevertheless, it bestows a benefit onto the contributor, which is

been taken or withheld but for the benefit." The evidence presented at trial did not meet these requirements.

30

negligible at best but still far more tangible than the candidate's mere decisions to run for office or continue to run for office. The candidate, meanwhile, receives a contribution and will be speaking in his capacity as a candidate or officeholder; if merely filing to run for office is an "exercise of official discretion," then surely an official appearance is as well. This is but one example of how broadly the bribery statute will chill political speech and association across Texas if the State's theory is allowed to stand, and it should be prohibited as unconstitutionally overbroad.

## C. A Candidate's Failure to Report or Misreporting Cannot Be Used Against a Contributor

To justify its treatment of Stacy Cary's campaign contributions to Suzanne Wooten the State argues that they were not, in fact, campaign contributions. To do so, at trial the State imported a strategy more perverse than its expansion of the bribery and money laundering statutes: whole-cloth invention of requirements in the Election Code. As the State argued before the trial court:

> Evidence was presented to the jury that the payments made to Spencer for the benefit of Suzanne Wooten were a) not reported on Suzanne Wooten's campaign finance reports in any form; b) not reported as a loan on Wooten's personal financial statements and c) over the limit of an allowable contribution to a judge. . . . Since the evidence demonstrated that the payments made by the Defendant do not meet the criteria for a proper legal contribution, the Defendant's conduct is not encompassed within §36.02(a)(4).

31

State's Response to Defendant's Motion for New Trial, 3 CR 1171, 1178. Indeed, to hear the State tell it, the bribery statute's provisions are not an added burden for the State, but a "safe harbor" that can only be met when contributors follow each provision of the Election Code and Government Code. *See* State's Closing Arguments, 9 TR 12. ("[F]or it to be a campaign contribution and to get this safe harbor, it has to be properly reported. It's not in any of the campaign finance reports.") This "safe harbor" is a mousetrap, and adds to the unconstitutional vagueness and overbreadth of the State's theory.

The Election Code places recordkeeping requirements on candidates and committee treasurers. TEX. ELEC. CODE § 254.001. The Code also requires candidates, officeholders and committees to file regular reports. TEX. ELEC. CODE §§ 254.031–254.164. Recordkeeping and reporting violations are misdemeanors applicable to candidates and treasurers. *See* TEX. ELEC. CODE §§ 254.001, 254.041. Likewise, the Code only places civil liability on a "candidate or campaign treasurer or assistant campaign treasurer of a political committee" who fails to file or files incorrectly. TEX. ELEC. CODE §§ 254.231, 254.232. The Code's reporting requirements extend beyond candidates and treasurers in other instances, but these do not relate to contributions. *See, e.g.*, TEX. ELEC. CODE § 254.261. Contributors like Stacy Cary, whether making a direct contribution to Suzanne Wooten or an indirect contribution to her campaign to Stephen Spencer, have no responsibility or

32

control over reporting contributions. Since contributors cannot account for a candidate's filing requirements, the State's theory presents yet another opportunity to subject even a contributor's wholly legal contributions to a bribery investigation, charge, and conviction simply because the candidate fails to report it. The "safe harbor" of reporting that the State claims will distinguish campaign contributions from bribes is but another vague and overbroad trap.

The State has tried this strategy before. A sister agency to the Attorney General's Office—the Public Integrity Unit—argued in the *DeLay* case that Tom DeLay's political committee Texans for a Republican Majority received illegal contributions from numerous corporations. The State alleged that these contributions were illegal because certain corporations did not designate their contributions to be used for purposes permitted by the Election Code. *See, e.g.*, State's Supplemental Letter Brief at 2–3, *DeLay v. State*, No. PD-1465-13, 2014 WL 3534745. Specifically, the State argued:

> [A] corporation violates the Election Code if the corporation makes a political contribution to a general purpose political committee with the understanding and intent that the PAC will use its funds in connection with campaigns for elective office and the corporation *does not designate or restrict those funds for a specific lawful purpose* set out in Section 253.100.

*Id.* This requirement remains nowhere in the Election Code itself, but is only the result of guidance from the Texas Ethics Commission and, unfortunately, this

33

Court. *Id.* (citing *Ex Parte Ellis*, 309 S.W.3d 71 (Tex. Crim. App. 2010)). The present case expands upon this approach by arguing the Election Code's extensive definition of "political contributions," "campaign contribution" and "contribution" is incomplete for purposes of the bribery statute. *See* TEX. ELEC. CODE §§ 251.001 (2), (3), (5). Once again, the State's definition is one that could not be understood by a seasoned election law expert, much less a person of ordinary intelligence. Campaign contributions must be defined using the provisions in the Election Code. Likewise, the safe harbor in the bribery statute must attend these provisions, and not hinge on a contributor's nonexistent reporting requirement.

### D. Cary's Campaign Contributions Were Not "Bribes" or Otherwise Proceeds of "Criminal Activity" and Thus Not Subject to the Money Laundering Statute

The money laundering charge in this case cannot stand because the funds in question were allegedly laundered in order to commit bribery. *See, e.g.*, 3 CR 1065; 9 TR 10 ("So the language here is knowingly finance, invest, or intend to finance or invest funds that the Defendant believes were intended to further criminal activity, to wit: Bribery.") Since the State's application of the bribery statute is unconstitutionally vague and overbroad, the money laundering charge also fails.

The money laundering statute cannot be readily applied to the activity in this case in any event. The statute applies to proceeds of "criminal activity." TEX.

34

PENAL CODE § 34.02. "Criminal activity" requires an offense "classified as a felony" under the laws of Texas. TEX. PENAL CODE § 34.01. Although some illegal campaign contributions are classified as felonies, this does not apply to judicial elections. *See* TEX. ELEC. CODE § 253.003(c) (excluding "Subchapter F," the Judicial Act, from felony penalties). The only penalties under the Judicial Act for violating contribution limits are civil. *See* TEX. ELEC. CODE § 253.155(f). Finally, throughout the Election Code the worst recordkeeping and reporting violations are misdemeanors, not felonies. *See* TEX. ELEC. CODE §§ 254.001, 254.041. By the laws' own wording, the money laundering statute does not apply to Stacy Cary's actions in this case.

The facts in this case would have supported several charges under the Election Code, but none of them would have been felonies and thus could not give rise to charges of money laundering. Even if this were possible legally, no one reading the Election Code and even the Penal Code along with it could reasonably expect money laundering charges to apply. Thus, for bribery and any other application to the activities in this case, the money laundering charge is moot or vague and overbroad as applied.

## E. Campaigning Is Not "Organized Crime"

As discussed previously, only one of the State's three bribery theories withstands First Amendment scrutiny, but since it was one of three alternatives for

conviction the charges cannot be saved and all six bribery convictions must be overturned. With this dismissal goes the money laundering charge, which required a legitimate bribery theory for conviction. This leaves one remaining conviction: "Engaging in Organized Criminal Activity by Conspiring to Commit the Offense of . . . Tampering with a Government Record." *See* 3 CR 1055–57. Since, like bribery, the organized crime charge was made with three alternative theories, two of which are unconstitutional, this charge must be overturned as well. However, it is worth discussing the legitimacy of the remaining theory in isolation.

The vagueness problems of the State's "safe harbor" theory of converting illegal campaign contributions into bribes are reflected in this remaining charge. *See supra* part IV(C). Stacy Cary could not report her contributions to Suzanne Wooten's campaign and thus could not shield herself from bribery inquiry, charges and conviction under the State's theory. Neither was Cary required to file a personal financial statement under the Government Code. *See* TEX. GOV'T CODE § 572.021. However, according to the State's theory, when Suzanne Wooten filed a report that did not include Cary's contributions (after not reporting them as "political contribution[s] . . . as required by Chapter 254, Election Code"), it was not merely a Class B misdemeanor committed by Wooten. TEX. GOV'T CODE §§ 572.023(b)(7)(B), 572.034(b) (imposing criminal penalty only for violations committed "knowingly and wilfully"). Nor, when Wooten filed her allegedly

36

erroneous report, did she commit a Class A misdemeanor for "knowingly mak[ing] a false entry in . . . a government record." TEX. PENAL CODE §§ 37.10(a)(1), (c)(1). This was, the State claims, *organized criminal activity* committed by both Wooten *and* Cary punishable directly to Wooten as a State Jail Felony and Cary a Class A misdemeanor for conspiracy. *See* TEX. PENAL CODE §§ 71.02(a)(13), (b), (c).

This brief has discussed the vagueness and overbreadth problems in this case *ad nauseam*, but this is only because the State created them. The remaining organized crime charge, though only a misdemeanor for Cary, is perhaps the pinnacle of the State's amalgamation. The path that an experienced election lawyer—much less a reasonable person of ordinary intelligence—must discern through provisions of the Election Code, Government Code and Penal Code to reasonably understand that a contributor could be subject to a charge of being part of an organized criminal conspiracy for a candidate's failure to report contributions is wholly antithetical to the First Amendment. If there was ever proof of the enduring necessity of the Supreme Court's admonition against the dangers of prolix laws in the *Citizens United* case, it is this part of the State's theory. 558 U.S. 310, 324 (2010) ("Prolix laws chill speech for the same reason that vague laws chill speech: People 'of common intelligence must necessarily guess at [the law's] meaning and differ as to its application.'" (citation omitted)).

37

The State's entire theory in this case is unconstitutionally vague and overbroad, and this Court rule accordingly.

## V. CONCLUSION

"Like some of Goldman Sachs's dealings with a Spanish bank, the wheeling and dealing was a tad shady, but legal." *DeLay v. State*, No. PD-1465-013, 2014 WL 4843914 (Tex. Crim. App. 2014) (Johnson, J. concurring). Stacy Cary's actions were at least a tad shady, and likely illegal—possibly subject to civil penalties up to $442,500. But the State did not prove bribery under the law. Instead, perhaps knowing it could not make a criminal case otherwise, the State circumvented the law's requirements and applied it in a way that no one could have foreseen. Because running for office and supporting candidates are at the heart of political speech and representative government, this legal theory was not only contrary to the laws in question but also the First Amendment. If Stacy Cary's conviction is upheld, the State will set a precedent that threatens all political candidates, contributors and campaigns across Texas to prosecutorial inquiries, charges and convictions for organized criminal activity. The criminalization of Texas politics through such prosecutorial machinations by the State should end here.

## PRAYER FOR RELIEF

For the reasons stated herein, *amicus* requests that this Court reverse the conviction of the Appellant in the 366th Judicial District Court of Collin County, Texas, remand to the Fifth Court of Appeals at Dallas for consideration of the issues discussed herein, or require briefing from the parties in this case on these issues.

Respectfully submitted,

/s/ Trey Trainor

JAMES "TREY" TRAINOR III
State Bar No. 24042052
Beirne, Maynard & Parsons, L.L.P.
401 W 15th St
Ste. 845
Austin, TX 78701-1667
(512) 623-6700 (Tel.)
ttrainor@bmpllp.com

*COUNSEL OF RECORD*

STEPHEN R. KLEIN*
Pillar of Law Institute
455 Massachusetts Ave. NW
Ste. 359
Washington, DC 20001-2742
(202) 815-0855 (Tel.)
stephen.klein@pillaroflaw.org

*OF COUNSEL FOR* AMICUS

*\*Motion for* pro hac vice *admission pending*

# CERTIFICATE OF SERVICE

I certify that on July 30, 2015, a true and correct copy of this *Amicus Curiae*

**Brief of the Pillar of Law Institute in Support of Appellant** was served by

electronic filing on appellate counsel of record in this proceeding as listed below.

| Counsel for State | Counsel for Appellant |
|---|---|
| Ken Paxton | John M. Helms |
| Attorney General of Texas | Fitzpatrick, Hagood, Smith & Uhl LLP |
| | Chateau Plaza, Ste. 1400 |
| Charles E. Roy | 2515 McKinney |
| First Assistant Attorney General | Dallas, Texas 75201 |

Adrienne McFarland
Deputy Attorney General
for Criminal Justice

Edward L. Marshall
Chief, Criminal Appeals Division

Joseph P. Corcoran
Assistant Attorney General
Supervising Attorney for Non-Capital
Appeals Criminal Appeals Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

/s/ Trey Trainor
James "Trey" Trainor III

**CERTIFICATE OF COMPLIANCE**

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that this document complies with type-volume limitations of TEX. R. APP. P. 9.4(i)(2)(B).

1. Exclusive of the exempted portions set out in TEX. R. APP. P. 9.4(i)(1), this document contains 9,279 words.

2. This document was prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14 for text and footnotes.


/s/ Trey Trainor
James "Trey" Trainor III