

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0659-15

### PAUL HENRI WAGNER, Appellant

### v.

### THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIFTH COURT OF APPEALS
## DALLAS COUNTY

**KELLER, P.J., filed a dissenting opinion.**

Penal Code § 25.07 is probably not *facially* unconstitutional, even under the Court's construction, but today's holding will cause some people to be unsure of what conduct the statute prohibits. There is an alternative way to construe the statute that eliminates this uncertainty and better comports with the language and context of the statute.

The Court construes communication to be harassing under the statute if it is (1) annoying, disturbing, bothering, or troubling, and (2) continual, persistent, or frequent.[1] The first part of this

---

[1] The Court says that a communication is in a harassing manner if it is such that would "persistently disturb, bother continually, or pester another person." The Court construes "pester" to

construction raises the question of just how irritating conduct must be, while the second part of this construction raises the question of how many times a person's communication must be annoying before it is deemed to be a violation of the statute. Moreover, the Court's definition of "harassing" is derived from one of several definitions of the verb "harass" that involve similar conduct but of varying degrees of frequency and intensity. This definition does not adequately address the context in which the adjectival form of that word appears in the statutory phrase "threatening or harassing manner." I would employ a definition that sets the intensity of the conduct as that which would produce substantial emotional distress. Under that definition, a defendant violates the statute if he intends or knows that his communication, or series of communications, is unwelcome and would cause substantial emotional distress to the protected individual. This formulation satisfies both the context of the statute and explains how we determine the intensity and frequency of conduct necessary to violate the statute.

## A. Context

In the past, we have indicated that the word "harass" is ambiguous.[2] The Court supplies several definitions of that term, all of which involve conduct or communication that is unwelcome, but with different levels of emotional intensity produced in the victim—ranging from "annoy" to "torment."[3] Some definitions of "harass" or "harassment" allow one instance of conduct or

mean "troubling or annoying someone with frequent or persistent requests or interruptions."

[2] *Long v. State*, 931 S.W.2d 285, 289 (Tex. Crim. App. 1996) (The words 'annoy' and 'alarm' remain in the statute although they are now joined by the words 'harass,' 'abuse,' 'torment,' and 'embarrass.' . . . [T]he additional terms are themselves susceptible to uncertainties of meaning.").

[3] *See* Court's op. at n.15. *See also Harass*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2016) ("1. to subject (another) to hostile or prejudicial remarks or

communication to be harassing, while others require multiple instances, with several different ways of describing the frequency of those multiple instances.[4] In other statutes, the legislature has used the words "harass" and "annoy" within the same provision,[5] and so, under the rule of construction that each word be accorded meaning if reasonably possible,[6] "harass" has, at least in other statutes, meant something different or more[7] than "annoy." Consistent with that idea, we have indicated that the term "harass" carries a higher emotional intensity than the term "annoy."[8]

Moreover, we are not construing "harass" in the abstract. The statute applies when someone communicates "in a threatening or harassing manner."[9] In pairing "harassing" with "threatening," the statutory language further supports the idea that what is proscribed is beyond mere annoyance and is, instead, conduct that produces substantial emotional distress. This conclusion follows under

---

actions; pressure or intimidate"; "2. to irritate or torment persistently."); *Harrassment*, BLACK'S LAW DICTIONARY (5th ed. 1979) ("Used in a variety of legal contexts to describe words, gestures and actions which tend to annoy, alarm and abuse (verbally) another person."); *Harrassment*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("Words, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation.").

    [4] *See supra* at n.3.

    [5] *See Scott v. State*, 322 S.W.3d 662, 669 (Tex. Crim. App. 2010) (quoting TEX. PENAL CODE § 42.07(a)(4)); *Long*, 931 S.W.2d at 288 (quoting former TEX. PENAL CODE § 42.07(a)(7)(A));

    [6] *Ex parte Perry*, 483 S.W.3d 884, 902-03 (Tex. Crim. App. 2016) ("[W]e presume that every word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible.").

    [7] Words within a list in a statute can have some overlap in meaning. *Clinton v. State*, 354 S.W.3d 795, 802 (Tex. Crim. App. 2011).

    [8] *See Long,* 931 S.W.2d at 296 (discussing the terms in the context of the then-existing stalking statute).

    [9] TEX. PENAL CODE § 25.07(a)(2)(A).

the interpretive canon *noscitur a sociis*: "a word is known by the company it keeps."[10]  While "not an inescapable rule," the canon is often applied where a word is capable of many meanings, in order to avoid giving a statute unintended breadth.[11]

Although, at first blush, there may seem to be some tension between the rule of construction that each word be accorded meaning if reasonably possible and the rule that words in a list likely share some commonality in meaning, the rules actually complement each other.[12]  Ordinarily, each word in a list will have a different, a broader, or a narrower meaning than other words in the list, but all the words in a list are likely to share some commonality in meaning.  Which of these two rules has the most effect on a statutory construction analysis will depend on the context, which can be illustrated by comparing *Long v. State* to the present case.  In the prior stalking statute that we addressed in *Long*, the term "harass" was contained in a series with a number of other terms of varying emotional intensity: "harass, annoy, alarm, abuse, torment, or embarrass."[13]  What these words have in common is that they denote unwelcome emotional distress.  Given the range of emotional distress from "annoy" to "torment," one could not conclude from the list itself that any of the words denote a similar level of emotional intensity—to the contrary, they seem to denote varying levels of emotional intensity.  But in the present statute, the pairing of "harassing" solely with "threatening" suggests that, while words conveyed in a "harassing manner" need not contain

---

[10]  *See McDonnell v. United States*, 136 S. Ct. 2355, 2368 (2016).

[11]  *Id.*

[12]  *See State v. Roggenkamp*, 153 Wash.2d 614, 623-24, 106 P.3d 196, 200-01 (2005) (applying both rules).

[13]  *See Long*, 931 S.W.2d at 288 (quoting former TEX. PENAL CODE § 42.07).

a threat, those words would convey an emotional impact similar to a threat, which would be a relatively high emotional intensity level—substantial emotional distress.[14]

### B. Frequency

The Court suggests that the repetition aspect of its definition of "harass" resolves any constitutional concerns about the vagueness of the statute—at least as applied in the present case. But in a given case, a person may be left to wonder how frequent the repetition must be. Do two instances suffice? The Court ostensibly adopts the definition of "harass" that was used by the court of appeals,[15] and that court stated that it was sufficient that the unwelcome communications were "repeated."[16] We have held that communications are "repeated" if there is more than one, and we have held that "repeated" does not entail a requirement that the communications have any temporal relationship with each other.[17] "More than once" may be a reasonable description of "repeated" but

---

[14] Although "threat" can sometimes have a broad meaning, *Perry*, 483 S.W.3d at 904-05, the phrase "threatening manner" has ordinarily been used to describe conduct that produces substantial emotional distress. *See e.g., Johnson v. State*, 509 S.W.3d 320, 321 (Tex. Crim. App. 2017) ("As he approached Amelia, he pulled a knife out of his pants and waved it at her and Aaron in a threatening manner and told them to '[b]ack the fuck up.'"); *Plummer v. State*, 410 S.W.3d 855, 860 (Tex. Crim. App. 2013) ("She was afraid that the defendant would use the knife against her during the aggravated robbery even though he never brandished it in a threatening manner."); *Adame v. State*, 69 S.W.3d 581, 585 (Tex. Crim. App. 2002) ("Specifically, the State introduced evidence that the defendant brandished the BB gun in a threatening manner and actually threatened to kill the victims of the offense.").

[15] *See Wagner v. State*, No. 05-13–01329-CR, 2015 Tex. App. LEXIS 4568, *10 (Tex. App.—Dallas May 5, 2015) (not designated for publication) ("A person harasses another when he persistently disturbs, bothers continually, or pesters that person.") (citing WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 645 (1989)).

[16] *See id.* at *13 ("The statute clearly protects Laura from appellant's repeated, unsolicited, and unwelcome communications in which he professes his love and begs her not to divorce him.").

[17] *Wilson v. State*, 448 S.W.3d 418, 424 (Tex. Crim. App. 2014).

it hardly seems to be an apt description of "continual, persistent, or frequent" communications. Yet it appears that all that the court of appeals's sufficiency analysis requires is more than one communication. The use of this standard by the court of appeals makes reviewing the correctness of the court of appeals's sufficiency holding problematic.

Even if we overlook the court of appeals's use of the word "repeated" and assume that it employed a standard requiring more frequency than the bare minimum necessary to establish repetition, neither this Court nor the court of appeals supplies a method of determining how many times unwelcome communication must occur to trigger the statute. Is three enough? Five? Once every two weeks? Once a month? How is a defendant supposed to know? Even conceding the Court's conclusion that the statute is not overbroad or vague *on its face*, we are still hampered in assessing the correctness of the court of appeals's sufficiency analysis, when we are not even sure what standard of frequency to use.

The Court also contends that the First Amendment is not implicated, at least in part because the protective-order statute is directed at a narrow class of people against whom a protective order has been shown to be needed. The need for a protective order might be sufficient justification for banning a defendant entirely from communicating with the protected individual. But if the protective-order court chooses to allow some communication, then the First Amendment dictates some degree of clarity and reasonableness in the limitations imposed.[18] Allowing appellate courts to use their own subjective views to decide when communications are sufficiently numerous that

---

[18] *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) (Even in a nonpublic forum, where the government as owner has the prerogative to reserve property for its intended purposes, restrictions on expression must be "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.").

they cross the line from being merely "repeated" to being "frequent" does not comport with the requisite degree of clarity.

However, using "substantial emotional distress" as the measure for determining "harassing manner" resolves the uncertainty regarding what is "continual, persistent, and frequent." The requisite frequency is shown when the repetitious communications are such that the defendant intends or knows that they would inflict substantial emotional distress.

Moreover, the Court's definition of "harass" actually narrows the statute unduly by reading a repetition element into the statute that the language does not require. As explained above, not all definitions of "harass" require repetition. If the legislature had intended to require repeated communications, it could have easily specified that, as it did in the telephone harassment statute.[19] A repetition requirement would also seem inconsistent with the pairing of "harassing" with "threatening" in the protective-order statute, because repetition is clearly not required for a communication to be "threatening."[20] Although repetition may generally be necessary to show the harassing nature of communication, under any reasonable understanding of "harassing manner," a single unwanted communication, if severe enough, could qualify (e.g., calling the complainant at 3:00 a.m. to tell her, untruthfully, that her house was burning down). And if repetition is not required, then "substantial emotional distress" again becomes a necessary marker for "harassing manner."

The court of appeals did not determine whether the evidence was sufficient to show that

---

[19] *See* TEX. PENAL CODE § 42.07(a)(4) ("makes repeated telephone communications . . . in a manner reasonably likely to harass . . .").

[20] *See supra* at nn. 10-11 and accompanying text (discussing interpretive canon of *noscitur a sociis*).

Appellant intended or knew that his communications would cause substantial emotional distress to Laura, the protected individual.  I would vacate the court of appeals's decision and remand the case for such a determination.

I respectfully dissent.


Filed: February 14, 2018

Publish